UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                           Case No. 16-CR-175

YOSVANY PADILLA-CONDE,

        Defendant.

---

## SENTENCING MEMORANDUM

---

Yosvany Padilla-Conde was convicted of aiding and abetting an attempt to join ISIS. He repeatedly swore allegiance to the murderous terrorist organization and then abandoned his child to travel across the country in order to help his friend join and fight for them. He is a Cuban national who served substantial prison time for multiple prior violent armed robberies. "Wisconsin Department of Corrections records show that he was a ranking member of the gang, 'The Rolling 60's Crips.'" PSR ¶ 49. Padilla-Conde should be sentenced to a 235-month term of imprisonment, to be followed by a life term of supervised release.

    I.      Nature and Circumstances of the Offense

Padilla-Conde aided and abetted Jason Ludke's attempt to join and fight for ISIS. And he personally swore allegiance to ISIS and promised a man he believed was an ISIS recruiter that he would join. He sent the recruiter several messages swearing as much,

and several more practice videos were found on his phone. He is likely to claim at sentencing that he never intended to join ISIS and merely meant to trick ISIS recruiters into helping him cross the border to Mexico before deserting ISIS once he was across the border. That claim strains credulity. If he wanted to cross from the United States to Mexico, surely the easiest path was not to briefly join ISIS, and then to desert – particularly given the fact that ISIS is known for executing deserters. If his sole goal were to cross from the United States to Mexico, one would think he would just cross the border to Mexico without going to the trouble of recording six videos swearing allegiance to ISIS and risking an execution. Or, he was telling the truth when a court was not watching and had adopted the doctrine he said he did. In any event he willingly aided and abetted Ludke's attempt to join, an attempt Padilla-Conde believed was sincere.

As this Court is aware, the doctrine to which Padilla-Conde swore allegiance is abhorrent. *See, e.g.*, Graham Wood, THE ATLANTIC, *What ISIS Really Wants* (available at https://www.theatlantic.com/magazine/archive/2015/03/what-isis-really-wants/384980/) (explicating ISIS's views and explaining that "the lack of objective reporting from its territory makes the true extent of the slaughter unknowable, but social-media posts from the region suggest that individual executions happen more or less continually, and mass executions every few weeks"); *see also United States v. Lutchman*, 910 F.3d 33, 36-37 (2d Cir. 2018) ("Lutchman pledged his allegiance to ISIL and stated his intention to 'spill the blood' of nonbelievers."); *United States v. Van Haften*, 881 F.3d 543, 543 (7th Cir. 2018) ("Van Haften fits the typical profile of a terrorist: he believes that ISIS is fighting a holy war against America—a war that will culminate in the establishment of

2

a global caliphate."); *United States v. Farah*, 899 F.3d 608, 612 (8th Cir. 2018) ("Daud and Farah longed for an opportunity to participate in an ISIL operation on American soil, and Omar looked forward to the demise of the United States: '[The infidels] are getting it. Allah will not let America be a superpower for this long . . . . [T]heir time is coming.'").

In 2015 and 2016, ISIS perpetrated hellish levels of violence. To this, Padilla-Conde was drawn and sought to contribute. And the allegiance and material support of foreign nationals like Padilla-Conde and Ludke are essential to ISIS advancing its goals. *See* Wood, *What ISIS Really Wants* ("Tens of thousands of foreign Muslims are thought to have immigrated to the Islamic State. Recruits hail from France, the United Kingdom, Belgium, Germany, Holland, Australia, Indonesia, the United States, and many other places. Many have come to fight, and many intend to die.").

It is perfectly irrelevant that Padilla-Conde was mistaken in his belief that he was communicating with an ISIS recruiter. He believed he was. He said he would join. He drove from Wisconsin to Texas and to the Mexican border in this effort, leaving his child behind. If he did not truly want to do these things, his behavior is hard to understand.

As the government emphasized in its sentencing memorandum regarding Padilla-Conde's co-actor, ISIS has killed countless people, and seeks, without exaggeration, the destruction of the United States of America. *See, e.g.*, *United States v. Suarez*, 893 F.3d 1330, 1332 (11th Cir. 2018) ("When the FBI arrested Harlem Suarez, he had already declared allegiance to the Islamic State of Iraq and al-Sham (ISIS), attempted to recruit others to join him in destroying the United States"), *cert. denied*, No. 18-6808, 2019 WL 113456 (U.S. Jan. 7, 2019); *Doe v. Mattis*, 889 F.3d 745, 749 (D.C. Cir. 2018) (ISIS "controls territory in

Iraq and Syria, and has perpetrated and aided terrorism there and around the world, killing several thousand civilians, including American aid workers and journalists."); *United States v. Khusanov*, 731 F. App'x 19 (2d Cir. 2018) (noting that ISIS has a "history of particularly violent conduct" and "target[s] members of the United States armed forces serving abroad and encourage[s] terrorist acts within this country") (citation omitted).

Padilla-Conde's actions were inherently dangerous and implicate the Material Support statute's *raison d'etre*. Section 2339B "criminalizes a range of conduct that may not be harmful in itself but that may assist, even indirectly, organizations committed to pursuing acts of devastating harm." *United States v. Farhane*, 634 F.3d 127, 148 (2d Cir. 2011). As the Supreme Court has stated, "[t]he material-support statute is, on its face, a preventive measure - - it criminalizes not terrorist attacks themselves, but aid that makes the attacks more likely to occur." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010). In *Boim v. Holy Land Found, for Relief & Dev.*, 549 F.3d 685, 690 (7th Cir. 2008) (en banc), the Seventh Circuit held that giving money to Hamas, in violation of Section 2339B, necessarily involves an act "dangerous to human life." As *Boim* reasoned, providing financial support to Hamas, "by augmenting Hamas's resources, would enable Hamas to kill or wound, or try to kill, or conspire to kill more people[.]" *Id*. at 694. *Boim*'s reasoning is doubly persuasive in this case.

Padilla-Conde's actions directly implicate these concerns and, therefore, merit the harshest sanction.

II.     History and Characteristics of the Defendant

4

Padilla-Conde has a history of violence. As detailed in the PSR, Padilla-Conde was convicted of Armed Robbery with the Use of Force after participating in two robberies in which victims' lives were threatened at gunpoint. Even in minimizing his present conduct and claiming he never intended to join ISIS, he says his plan was to run away to Mexico. He never told the mother of his child as much, naturally, which is to say his plan was to completely abandon his child. His efforts to seek and maintain employment as an adult man have been meager at best, undoubtedly hampered by the impossibility of gaining lawful permanent resident status given his violent crimes. Little here weighs in favor of a below guidelines sentence.

### III. Avoiding Unwarranted Disparity

The government makes its sentencing recommendation cognizant of the fact that Padilla-Conde's co-actor, Jason Ludke received an 84 month sentence from this Court. That sentence was, if not shortest, then one of the shortest sentences ever imposed by any federal court on a non-cooperator defendant who had violated the material support for a foreign terrorist organization statute. Thus, there is tension in this case between avoiding unwarranted intra-case disparity and avoiding unwarranted inter-case disparity.

The government highlights below recent cases in which defendants received statutory maximum sentences for convictions under Section 2339B involving the provision of personnel to Foreign Terrorist Organizations:

- Abdella Tounisi, 13 Cr. 328 (N.D. Ill.): Tounisi made plans to travel to Syria to join Jabhat al-Nusrah, a militant terrorist group associated with al-Qaida. Tounisi visited a purported recruitment website for Jabhat al-Nusrah and emailed the listed contact person, who was an FBI agent. Tounisi was arrested at O'Hare International Airport attempting to

5

board a flight to Turkey. Tounisi pled guilty to one count of Attempting to Provide Material Support to ISIS and was sentenced to the statutory maximum of 15 years.[1] The Seventh Circuit recently affirmed his sentence. *See Tounisi*, 900 F.3d at 987-88.
- Abdurasul Hasanovich Juraboev and Akhror Saidakhmetov, 15 Cr. 95 (E.D.N.Y.): Juraboev and Saidakhmetov were roommates who sought to travel to ISIS-controlled territories. Juraboev and Saidakhmetov were eventually apprehended: Saidakhmetov after attempting to board a flight to Turkey, and Juraboev after purchasing a ticket for a flight to Turkey. Both defendants pled guilty to one count of Conspiracy to Provide Material Support to ISIS and were each sentenced to the statutory maximum of 15 years.
- Alla Saadeh, 15 Cr. 0558 (D.N.J.): Saadeh assisted his brother in attempting to join ISIS by paying for his ticket to Jordan. Saadeh also wished to join ISIS himself. Saadeh pled guilty to one count of Attempting to Provide Material Support to ISIS and was sentenced to the statutory maximum of 15 years.
- Adam Dandach, 14 Cr. 00109 (C.D. Cal.): Dandach made plans to travel to ISIS-controlled territory, purchased a ticket to fly from Orange County to Turkey, and was arrested at the John Wayne International Airport. Dandach pled guilty to one count of Attempting to Provide Material Support to ISIS and passport fraud and was sentenced to 15 years' incarceration, including the statutory maximum of 15 years on the Section 2339B charge.

Yosvany Padilla-Conde is a Cuban national who joined a gang, committed two violent armed robberies, served years in prison, and then swore allegiance to ISIS and aided an attempt to provide ISIS material support. The United States submits that the only sentence that can accomplish the goals of sentencing is a sentence of 235 months imprisonment to be followed by a life term of supervised release.

---

[1] On June 2, 2015, the Senate passed the USA Freedom Act, increasing the penalty for violations of Section 2339B from 15 to 20 years.

Respectfully submitted at Milwaukee, Wisconsin, this 2nd day of August, 2019

                            MATTHEW D. KRUEGER
                            United States Attorney

By:    *s/Benjamin Taibleson*
        Benjamin Taibleson
        Assistant United States Attorney
        Office of the United States Attorney
        Eastern District of Wisconsin
        517 East Wisconsin Avenue, Room 530
        Milwaukee, WI 53202
        Telephone: (414) 297-1700
        Fax: (414) 297-1738
        benjamin.taibleson@usdoj.gov

        Joseph Attias
        Trial Attorney
        U.S. Department of Justice
        National Security Division
        950 Pennsylvania Avenue, NW
        Washington, DC 20530
        Telephone: 202-616-0736
        joseph.attias@usdoj.gov